**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
ROBERT EHRLICH,

                       Plaintiff,                       **MEMORANDUM**
                                                             **AND ORDER**

    - against -

                                                                  CV 04-4025 (LDW) (JO)

THE INCORPORATED
VILLAGE OF SEA CLIFF, et al.,
                       Defendants.
---------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       Defendant Richard A. Siegel ("Siegel") moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike portions of the Second Amended Complaint, Docket Entry ("DE") 26, filed by plaintiff Robert Ehrlich ("Ehrlich"). DE 33-3 ("Motion"). Specifically, Siegel objects to the allegations contained in paragraphs 51 and 52 of the Complaint on the grounds that they have no relation to the relief sought and are meant simply to embarrass him and damage his reputation. *Id.* Ehrlich argues that the motion fails to satisfy several different requirements of the governing procedural rule and should therefore be denied. DE 33-5 ("Opposition"). For the reasons set forth below, I grant Siegel's motion and order that paragraphs 51 and 52 be stricken.

I.    <u>Background</u>

       On September 16, 2004 Ehrlich filed a complaint alleging, among other things, that the defendants intentionally discriminated against him on the basis of his Jewish faith by selectively enforcing Village zoning ordinances in connection with the operation of his coffee shop. DE 1 at 1-4. The complaint contained the following paragraphs now at issue:

> 51.    Upon information and belief, sometime in the 1980's, SIEGEL converted from Judaism to Espicopalian, divorced his Jewish wife, and married a non-Jewish women. According to a Supreme Court, Nassau County reported decision dated January 27, 1984 (Balletta, J.), SIEGEL attempted to raise his Jewish son in

his new Episcopalian faith during visitation periods. His attempted conduct resulted in a decision which held as follows:

> "The plaintiff, Susan Siegel, is currently practicing the Jewish faith and her son, Steven, likewise is practicing that faith and obtaining the usual and customary religious training looking toward his bar mitzvah. The defendant [Richard Siegel] claims that the plaintiff failed to consult with him about the religion in which Steven should be reared, and takes the child to Episcopal services, ordering the child to accompany him and his wife to such services during visitation periods. It is uncontroverted that the child wishes to be brought up in the Jewish faith. Apparently, the defendant thinks it would be proper for Steven to practice the Episcopal religion while under the control and direction of his mother in the house where the mother practices the Jewish faith, and the boy's sister, who has been bat mitzvahed, practices the Jewish faith. It is my personal belief that the defendant's position is absolutely ridiculous. How can he possibly be interested in the welfare of his son and expect that his son would be brought up in and practice a different religion than that of the custodial parent and his sister, all of whom live together." *Siegel v. Siegel*, 122 Misc.2d 932, 472 N.Y.S.2d 272, 273 (Sup. Ct. Nassau Cty. 1984.)

52. Upon information and belief, this conduct, among other things, indicates SIEGEL's bias and prejudice towards those of the Jewish faith.

DE 1; *see also* DE 8 ¶¶ 51-52 (same allegations in First Amended Complaint); DE 26 ¶¶ 51-52 (same allegations in Second Amended Complaint).

In a letter dated April 29, 2005, Siegel requested a pre-motion conference before the Honorable Leonard D. Wexler, United States District Judge, in anticipation of filing a motion pursuant to Federal Rule of Civil Procedure 12(f) to strike the quoted paragraphs. At the requested conference on June 14, 2005, Judge Wexler granted Siegel leave to file the motion and also granted Ehrlich an opportunity to further amend his complaint. Ehrlich did so on July 26, 2005, but retained the allegations at issue in this motion. DE 26. Siegel thereafter filed the instant motion on October 18, 2005, and Judge Wexler referred it to me two days later.

II.  Discussion

   A.  The Paragraphs Actually In Issue

Before addressing the merits of Siegel's motion, I pause to clear up a potential source of confusion. In opposing the motion, Ehrlich quoted paragraphs 50 and 51 of his Second Amended Complaint and mistakenly labels them as paragraphs 51 and 52, respectively. Opposition at 3. One of the paragraphs he quoted is at issue in this motion, the other is not. That there have been three different complaints to date does not explain the mistake: the relevant paragraphs have had the same numbers in all three pleadings. *See* DE 1 ¶¶ 51-52; DE 8 ¶¶ 51-52; DE 26 ¶¶ 51-52.

At the risk of stating the obvious, Siegel does not seek to strike paragraph 50. Ehrlich's opposition to striking that paragraph is therefore moot. Siegel does seek to strike paragraph 52, and Ehrlich has offered no explanation as to why at least that portion of the requested relief should not be granted. To avoid needless additional litigation, however, I will read Ehrlich's opposition as broadly as I would a submission from a litigant proceeding *pro se* and assume that he does indeed oppose striking paragraph 52 for the reasons set forth in his Opposition.

   B.  The Applicable Legal Standard

A motion to strike arises under the following rule:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

Such motions are generally disfavored and should succeed only when the challenged portion of a pleading is scandalous, impertinent, or redundant. *See Wine Markets International,*

*Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998). A defendant seeking to strike part of a complaint "must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Id*. (citing *Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1061 (E.D.N.Y. 1991). In terms of the timing for such a motion, Rule 12(f) explicitly permits a court to strike portions of a pleading on "its own initiative at any time." Fed. R. Civ. P. 12(f). As a result, the provision allowing a party 20 days to seek such relief on its own is "'essentially unimportant.'" *Ciminelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984) (quoting 2A J. Moore, Moore's Federal Practice, ¶ 12.21, at 2420 (2d ed. 1983)); *see also Bass*, 177 F.R.D. at 133.

    C.    <u>The Merits Of The Motion</u>

Ehrlich argues that Siegel's motion is not timely and should therefore be barred on procedural grounds. Opposition at 5. Ehrlich filed his second amended complaint on July 14, 2005, DE 26, and Siegel answered it on July 29, 2005. DE 28. Pursuant to Rule 12(f), had Siegel not filed an answer, a timely motion to strike would have been due by August 3, 2005. *See* Fed. R. Civ. P. Rule 12(f). Although Ehrlich's technical point is well taken, "judicial discretion has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper." *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) (citations omitted). I therefore proceed to the substance of the motion; if the motion lacks merit it should be denied for that reason, but if the opposite is true I have the authority to grant appropriate relief and prefer to resolve the matter on its merits.

Ehrlich claims that he "was discriminated against on the basis of his religion, and that [Siegel,] the Village Attorney, discriminated against him and exercised his influence over the other defendants in connection with [his] zoning application." Opposition at 6. Ehrlich further argues that Siegel's conduct in a domestic dispute, which was addressed in a state court decision quoted in paragraph 51, bears "directly on Mr. Siegel's attitude toward the Jewish faith and gives rise to an inference of religious animus." *Id*.

Paragraph 51 refer to Siegel's 1984 divorce proceedings, and Ehrlich asserts that Seigel's conduct at that time "indicates Siegel's bias and prejudice towards those of the Jewish faith." *Id*. Specifically, Ehrlich claims that Siegel's effort over twenty years ago to expose his son to his Episcopal church, despite his son's apparent adherence to the Jewish faith, somehow supports an inference of animus against Judaism. The assertion is specious. If Ehrlich proves the allegations in paragraph 51, the conclusion that Siegel has a "bias and animus against those of the Jewish faith" would not follow as a matter of logic. Even if I accept the allegations in Paragraph 51 as true, I can rationally have no idea whether Siegel's conduct in 1984 was the result of bigotry, a sincere adherence to a new-found faith, or any of a multitude of other potential reasons.

In addition, although it is not my role to make evidentiary rulings that will control the trial in this case, resolution of the motion does require me to decide if I believe evidence offered in support of the challenged allegations would be admissible. I conclude that it would not. First, as explained above, proof of the allegations would not support the inference that Ehrlich asserts. Second, even if they supported an inference that Siegel had acted out of religious bias in a domestic matter some 20 years ago, it would be a stretch, to put it mildly, that such proof would support a further inference that a similar bias informed Siegel's much later actions with respect to

5

the enforcement of Village zoning laws. As a result, I believe that any evidence offered in support of the challenged allegations would be wholly irrelevant and therefore inadmissible. *See* Fed. R. Evid. 401, 402. Third, even if marginally relevant, the probative value of any proof about Siegel's divorce and custody disputes would be far outweighed by the likelihood that the admission of such evidence would lead to "unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The foregoing analysis of the admissibility of proof supporting the challenged portions of the complaint does not preclude Ehrlich from offering such proof in support of other allegations in the complaint – that is a matter committed to the trial judge's sound discretion and will be decided, if necessary, against the backdrop of a record far more developed than that now before me. But to the extent that the instant motion turns on a question of admissibility, I cannot sidestep the matter on the ground that the matter has yet to come to trial or that I will likely not preside at any such trial. Avoiding decision on that ground, as Ehrlich urges me to do, *see* Opposition at 9, would frustrate not only the evident intent of Rule 12(f), but also the obvious intent of Judge Wexler's order of referral.

Finally, for the same reasons that I believe evidence supporting the challenged allegations would be inadmissible, I also conclude that they "have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Bass*, 177 F.R.D. at 133. The issues presented in this case have nothing to do with Siegel's decades-old divorce, and proving up facts related to the latter would unduly risk prejudice to the movant by implicitly (or apparently explicitly, if Ehrlich has his way) inviting the jury to consider Siegel a bigot on the basis of conduct that inherently supports no such conclusion.

III.   Conclusion

For the reasons set forth above, I grant defendant Siegel's motion to strike paragraphs 51 and 52 from the Second Amended Complaint.

**SO ORDERED.**

Dated: Central Islip, New York
November 1, 2005

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge