UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT EHRLICH, 100 ROSLYN AVENUE LLC
and SEA CLIFF COFFEE COMPANY, INC.,

                Plaintiffs,

    - against -

THE INCORPORATED VILLAGE OF SEA CLIFF,
EILEEN KREIB, individually and as Mayor of the
Village of Sea Cliff and as former Village Trustee,
CLAUDIA MOYNE, individually and as former Mayor
of the Village of Sea Cliff, RICHARD A. SIEGEL,
individually and as Village Attorney for the Village of
Sea Cliff, THE BOARD OF TRUSTEES FOR THE
INCORPORATED VILLAGE OF SEA CLIFF, PAUL
MARCHESE, PETER HAYES, ROBERT HAIM, and
ELENA VILLAFANE, individually and constituting
the Board of Trustees, THE ZONING BOARD OF
APPEALS OF THE INCORPORATED VILLAGE OF
SEA CLIFF, GEORGE BEVAD, THOMAS POWELL,
JOHN BRADY, DINA EPSTEIN, JAMES O'DONNELL
and PATRICIA HARRIGAN, individually and
constituting present and former members of the Board of
Zoning Appeals, the PLANNING BOARD FOR THE
INCORPORATED VILLAGE OF SEA CLIFF, JOHN
D. NAGY, FRED EDER, GERARD IZZO, NORMAN
PARSONS, and LAURIE MARTONE, constituting the
current members of the Planning Board, and DAVID
DERIENZIS and JEFFREY MONGNO, individually and
as current and former Building Inspectors for the
Incorporated Village of Sea Cliff,

                Defendants.
-------------------------------------------------------------------X

**ORDER**

CV 04-4025 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

    Before the Court is Plaintiffs' motion pursuant to Fed. R. Civ. P. 26, 34 and 37(a) to

compel the inspection of the property located at 66 Altamont Avenue (the "Altamont property")

pursuant to the "Notice to Enter Upon Land" served upon Defendant Village of Sea Cliff on February 3, 2007. Defendant Village of Sea Cliff has opposed the motion.

Having considered the parties' respective submissions, the oral arguments heard before me and the applicable law, I am DENYING Plaintiffs' motion for the reasons set forth below.

## II.     BACKGROUND

On February 1, 2007, Plaintiffs served a non-party subpoena upon the owner of 34 Woodbridge Lane, Sea Cliff, New York and also served Defendant Village of Sea Cliff with a Notice to Enter Upon Land, scheduling the inspection of the Altamont property for February 12, 2007. On February 8, 2007, Defendant Village of Sea Cliff moved by letter motion [DE 94] to quash Plaintiffs' non-party subpoena seeking to inspect the property located at 34 Woodbridge Lane. Defense counsel argued that the inspection was irrelevant to the issues raised in this litigation and was untimely because it could not be completed within the February 15 discovery deadline. Plaintiffs' counsel opposes that motion, arguing that because the property was owned by a non-party, Defendant lacked standing to quash the subpoena. With respect to the Altamont property, defense counsel has objected to Plaintiffs' notice, thereby "putting the burden on plaintiffs to move for an order compelling us to permit entry." [DE 94]

After hearing oral argument from both sides, I denied Defendant's motion to quash as to

the 34 Woodbridge Lane property because "parties typically are deemed to lack standing to quash subpoenas issued to non-parties under Rule 45 absent a claim of privilege or some proprietary or personal interest in the subpoenaed matter." *Tummino v. Von Eschenbach*, No. 05-CV-366, 2006 U.S. Dist. LEXIS, at *12 (E.D.N.Y. Nov. 6, 2006). Since the 34 Woodbridge Lane property is owned by a third-party who has apparently consented to the inspection, and the Village Defendant has made no showing of privilege or any proprietary or personal interest in the subpoenaed matter, I found that the Village lacked the requisite standing sufficient to quash the subpoena.

However, insofar as the Altamont property is owned by the Village of Sea Cliff, it appears that the Defendant Village has standing to challenge this inspection. At the February 8, 2007 conference, Plaintiffs' counsel stated that she would move to compel with respect to the notice to inspect the Altamont property, but raised concern over the February 15, 2007 discovery deadline. Specifically, Plaintiffs' counsel stated that she was planning to have experts examine the 34 Woodbridge Lane property immediately. According to Plaintiffs, however, the cost would be far greater if Plaintiffs were required to inspect the 34 Woodbridge Lane property and the Altamont Avenue property separately. Plaintiffs' counsel stated that the inspection dates for the 34 Woodbridge Lane property were scheduled for February 12 and 13. I informed the parties during the February 8 conference that Plaintiffs had not explained the relevancy of either

inspection to the underlying claims and defenses asserted in this case. Nonetheless, I granted Plaintiffs' requests for an extension of time beyond February 15, 2007, solely for the purpose of completing the inspection of both properties should counsel's motion to compel be granted. I further advised Plaintiffs' counsel that "if Plaintiffs choose to incur costs for proceeding with inspection and testing, then they are hereby warned that they do so at their own peril." [DE 95]

Plaintiffs now move pursuant to Rules 26, 34 and 37(a) of the Federal Rules of Civil Procedure to compel the inspection of the Altamont property pursuant to the Notice to Enter Upon Land served upon Defendant Village of Sea Cliff on February 3, 2007.[1]

### III. STANDARD OF REVIEW

A motion to compel is entrusted to the sound discretion of the district court. *American Sav. Bank, FSB v. UBS Paine Webber, Inc., (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah*, (*In re DG Acquisition Corp.*), 151 F.3d 75, 79 (2d Cir. 1998) (citing *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992)). A district court is considered to have

---

[1] Plaintiffs unilaterally shortened the notice period from that provided for in the Federal Rules.

abused its discretion "if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

Fed. R. Civ. P. 34(a)(2), provides that:

> Any party may serve any other party a request to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection, measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Fed. R. Civ. P. 34(a)(2). Such a request must set forth the property to be inspected and "specify a reasonable time, place, and manner of making the inspection and performing the related acts." Fed. R. Civ. P. 34(b). The Second Circuit has held that with regard to a Rule 34 inspection, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *New York Assoc. for Retarded Children v. Carey*, 706 F.2d 956, 961 (2d Cir. 1983). "Granting or denying a request under rule 34 is a matter within the trial court's discretion, and it will be reversed only if the action taken was improvident and affected substantial rights." *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958). Courts have repeatedly held that the scope of a Rule 34 request is governed by Rule 26(b). *See, e.g., Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 907 (4th Cir. 1978); *Macort v. Goodwill Indus.-Manasota, Inc.*, 220 F.R.D. 377, 379 (M.D. Fla. 2003). Fed. R. Civ. P. 26(b) describes the scope of, and limitations on, discovery in civil litigation. It provides as

follows:

> (1) In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. ... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b). "Relevance" under the Rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) ("The broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy.")

**IV.     DISCUSSION**

This is an action brought primarily under 42 U.S.C. § 1983 involving allegations of religious discrimination against the Village of Sea Cliff and various officials and trustees of the Village. Plaintiffs allege that due to Plaintiff Ehrlich's Jewish faith, the business located at 100 Roslyn Avenue has undergone a biased and more arduous process to obtain the zoning approvals and permits than other similarly situated Sea Cliff businesses. In their Second Amended Complaint, Plaintiffs combine ten (10) causes of action seeking injunctive, declaratory and

monetary relief. The claims for monetary relief include alleged violations of: (1) 42 U.S.C. § 1983 based upon disparate treatment of Plaintiffs, because of Plaintiff Ehrlich's religious beliefs, compared to other similarly situated property owners; (2) substantive due process rights under § 1983 relating to infringement of Plaintiff Ehrlich's property rights; (3) § 1985 based on an alleged conspiracy to deprive Plaintiff Ehrlich of his right to equal protection under the New York State and federal Constitutions and § 1986 for the purported failure of defendants to prevent or correct the pattern and practice of discriminatory conduct toward Plaintiff. With regard to declaratory relief, Plaintiffs seek a declaration that (4) the restrictive covenant at issue regarding cooking on the premises is extinguished; (5) the statutory scheme and conditions imposed by the Village, its Trustees, the ZBA and Planning Board are unconstitutional and ultra vires; (6) Defendants have deprived Plaintiffs of the economic viability of the property, constituting an illegal regulatory "taking" in violation of § 1983; (7) the positive declaration issued by the Village of Sea Cliff Planning Board finding that a DEIS was required was invalid and compelling Defendants to issue a negative declaration without conditions; (8) Chapter 60 of the Village Code is void and illegal as a matter of law; (9) Condition # 1 of the Conditioned Negative Declaration requiring Plaintiffs to agree to never apply for an alcoholic beverage license is void, invalid and improper as matter of law; and (10) the December 6, 2004 decision is modified to eliminate all conditions on the use of Plaintiffs' property and directing Defendants to

7

issue Plaintiffs a Certificate of Occupancy.

Plaintiffs argue that they should be permitted to inspect the Altamont property because the inspection is not only germane but is encompassed under the broad definition of "relevance." Plaintiffs argue that such inspection is needed to demonstrate that the Village of Sea Cliff treated Plaintiffs' property differently from other similarly situated properties. Additionally, Plaintiffs assert that the proposed inspection of the Altamont property

> involves little inconvenience to defendant and no out of pocket costs to defendant at all. Plaintiff plans on using a 2 step process: first, a non-invasive subsoil imaging to identify buried items and map subsoil conditions followed by the taking of "core samples" which do not change the soil conditions or create scares upon the land.

Pltffs.' Mem. at 2. According to Plaintiffs' counsel, the Altamont property and the 34 Woodbridge Lane property "were both allegedly illegal dumping sites." *Id.* Counsel goes on to state that the testimony of Defendants Krieb and Marchese shows

> they knew that the Altamont site was contaminated yet took no steps to prepare an EIS or to contain or prevent the spread of contaminants caused by the construction activities which would disturb the contaminated soil and create pollution of the air and nearby water; yet the defendants forced plaintiff to perform a full bore DEIS complete with six month traffic study and noise study in order to achieve a permit allowing longer hours of operation and the "installation" of a toaster oven. In addition to showing the jury that plaintiffs were treated differently than similarly situated properties, i.e., other food establishments, plaintiffs are entitled to show how the Village not only abused its powers under SEQRA to discriminate against plaintiffs, but also ignored its obligation under SEQRA even when the resulting risk of environmental harm and outspread contamination was great. This provides

8

context which highlights the maliciousness of defendant's conduct toward plaintiffs. *See id.* at 2-3.

In opposing the motion, Defendants argue that the Altamont property is wholly irrelevant to the claims and defenses brought in this action and improperly asserted for Equal Protection purposes because the Altamont property is not a "similarly situated" business. [DE 103] Defendants also maintain, *ipse dixit*, that Plaintiffs are improperly seeking to obtain information concerning the Altamont property for reasons other than the instant litigation. No information presented to me in these motion papers has provided concrete support for that conclusion and I decline to engage in speculation and conjecture on this issue.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlem Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "To prevail on a selective treatment claim, a plaintiff must demonstrate that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights , or malicious or bad faith intent to injure a person.'" *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006) (citing *LaTrieste Rest. & Cabaret v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)).

In establishing the similarly situated element, the Second Circuit has cautioned that "the

9

level of similarity between plaintiffs and the persons **with whom they compare themselves must be extremely high**." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (emphasis supplied). "In order to succeed, the [plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." *Id.* at 104 (citing *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). To ascertain whether similar circumstances are "*prima facie* identical," the Second Circuit requires a plaintiff to satisfy a two-prong test, namely, that "(1) no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy, and (2) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson*, 409 F.3d at 105. I find that the property located at 100 Roslyn Avenue is sufficiently dissimilar to the Altamont property to warrant denial of Plaintiffs' motion to compel. In demonstrating that the Altamont property and Plaintiffs' properties are not similarly situated, Defendant points to several key differences which I find persuasive, particularly with regard to application of the Second Circuit's two-part analysis. For example, Defendant points out that (1) the Altamont property is publicly owned while Plaintiffs' property is privately owned; (2) the Altamont property houses a garage while Plaintiffs' property is a restaurant; (3) the conduct in question regarding the Altamont property concerned removal of

"fly ash," a potential environmental problem, whereas Plaintiffs' applications concerning the subject property encompass a variety of zoning issues associated with operating a permanent restaurant; (4) Plaintiffs' property is proximate to certain historic structures, a characteristic not shared by the Altamont property; (5) the SEQRA determination for the Altamont property was made by the Board of Trustees whereas the SEQRA determination for Plaintiffs' property was made by the Planning Board; (6) there was no restrictive covenant associated with the Altamont property while a restrictive covenant was clearly part of Plaintiffs' ownership interest in the coffee shop property giving rise to this litigation.  [DE 103]

Based upon these key differences, it cannot be said with a degree of certainty that "no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" or that the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.  Therefore, since the Altamont property is not one "similarly situated" to Plaintiffs' property, there is no legitimate, relevant basis to undertake the requested inspection.

Plaintiffs nonetheless urge that inspection is appropriate because the information obtained from such inspection, from Plaintiffs' perspective, is relevant here.  Prior to 1970, "good cause" was a prerequisite to any discovery order under Rule 34.  *See McKesson Corp. v. Islamic*

*Republic of Iran*, 185 F.R.D. 70, 75 (D. D.C. 1999); *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 248 (D. Minn. 1997). However, following the 1970 amendments to the Federal Rules, the good cause requirement was eliminated. *See* Notes of the Advisory Committee (1970), Fed. R. Civ. P. 34. As amended, a party's request comes within the coverage of Rule 34 "if the proposed entry and inspection are within the scope of Rule 26(b)." *Minnesota Mining & Mfg. Co.*, 171 F.R.D. at 248 (citing *Cuno, Inc. v. Pall Corp.*, 116 F.R.D. 279, 281(E.D.N.Y. 1987)). "Inspection is permitted, and indeed anticipated by Rule 34(a), to be governed by the scope of Rule 26(b)." *Cuno, Inc.*, 116 F.R.D. at 281. In *Cuno*, a patent infringement action, Magistrate Judge Jordan granted plaintiff's motion to compel an inspection of defendant's business and allowed plaintiff the opportunity "to inspect, observe, videotape, and photograph the claimed infringing process." *Id.* at 280. In support of his holding, Judge Jordan noted since the 1970 amendments to the Federal Rules a showing of need is not a prerequisite for an order to compel inspection. *Id.* Rather, "only a showing of relevance is necessary." *Id.* at 281.

Plaintiffs' demonstration of "relevance" as reflected in their letter motion is not compelling. Any relevance of the desired inspection to the substance and merits of the claims as stated in this case is marginal at best. From my review of the claims themselves and the arguments of counsel, I find this request to be far afield from the crux of this case and not one

12

contemplated or supported by my prior decision to permit discovery to be re-opened for limited purposes in this matter. Absent a showing of relevance, courts have repeatedly denied requests to inspect property pursuant to Fed. R. Civ. P. 34. *See, e.g.*, *Belcher*, 588 F.2d at 908 ("Neither rule 34 nor rule 26, the general discovery rule, permits blanket discovery upon bare skeletal request when confronted with an objection... Some degree of need must be shown. In most cases, this need is demonstrated by simply showing the relevancy of the desired discovery to this cause of action."); *Macort*, 220 F.R.D. at 379 (limiting plaintiffs' Rule 34 inspection in ADA case to those specific barriers of access enumerated in the complaint and denying plaintiffs' request to determine whether there are mobility-related barriers on defendant's property); *Schwab v. Wyndham Int'l, Inc.*, 225 F.R.D. 538, (N.D. Tex. 2005) (denying a Rule 34 motion to compel entry upon premises for inspection since "plaintiff has not articulated, much less proved, a need for inspecting and photographing the premises" and because "general and conclusory assertions do not justify unrestricted access to Wyndham's corporate headquarters."); *Teer v. Law Eng'g and Envtl. Serv., Inc.*, 176 F.R.D. 206 (E.D.N.C. 1997) (denying Rule 34 motion to compel entry noting that "whether to permit entry upon land involves a balancing of degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.")

Under the rubric of Rule 26(b) the Court has the authority, and the inclination, to confine

13

discovery to those claims and defenses asserted in the pleadings so that the actual scope of discovery is determined according to the reasonable needs of the action. *See* Notes of the Advisory Committee (2000), Fed. R. Civ. P. 26. Based upon the facts presented on this motion, Plaintiffs have not demonstrated how an inspection of the Altamont property is necessary or relevant to any of their claims. I therefore decline to grant the motion.

**V.** <u>**CONCLUSION**</u>

Accordingly, Plaintiffs' motion to compel entry and inspection upon the Altamont property is hereby DENIED.

**SO ORDERED.**

Dated: Central Islip, New York
May 31, 2007

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge